UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           CRIMINAL ACTION NO. 5:19-cr-00293

GEORGE ALBERT ROMER, JR.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant George Albert Romer, Jr.'s, Motion to Suppress [Doc. 62], filed June 18, 2020, to which the United States responded on June 23, 2020. [Doc. 67].

On June 25, 2020, the Court held an evidentiary hearing on the motion. Mr. Romer and counsel Kristopher Faerber appeared before the Court. Also present were Assistant United States Attorneys, Jennifer Herrald and Courtney Cremeans. The Court heard testimony from one witness, Sergeant Steve A. Sommers, with the Mercer County Sheriff's Department.

**I.**

On November 1, 2019, Mr. Romer was arrested at the Relax Inn in Lewisburg, West Virginia, after allegedly arranging to meet and pay a minor that he had met using an online dating application for the purpose of sex. Following his arrest, Mr. Romer was taken into custody and transported to the West Virginia State Police Department Lewisburg Detachment to be interviewed. Mr. Romer provided a recorded audio statement to law enforcement officers, signed a consent to search form, and signed a waiver of his Fifth Amendment rights set forth in *Miranda v. Arizona*, 354 U.S. 436 (1996). Mr. Romer now moves the Court to suppress (1) the evidence obtained from the searches of his vehicle, hotel room, and cellular phone on the basis of

involuntary consent, (2) his statements made to law enforcement officers prior to being Mirandized in violation of his Fifth Amendment rights, and (3) his statements made to law enforcement officers after being Mirandized on the basis that they were involuntarily obtained.

## II.

A. **Consent to Search**

Mr. Romer first asserts that his consent to search his vehicle, hotel room, and cellular phone was involuntary, rendering the searches unreasonable and in violation of his Fourth Amendment rights. In support of this assertion, Mr. Romer contends that his consent to search was obtained during "an inherently coercive custodial interrogation, after the searches had been conducted, without verbally advising [him] of his right to refuse consent or his right to remain silent, and following a traumatic incident wherein [he] was the target for numerous armed law enforcement officers." [Doc. 62 at 2]. Accordingly, Mr. Romer contends that, based on the totality of the circumstances, his consent was involuntary; therefore, the evidence obtained as a result of the unreasonable searches must be suppressed.

The United States responds that the totality of the circumstances demonstrates that Mr. Romer's consent to search his vehicle, hotel room, and cellular phone was voluntary. The United States contends that Mr. Romer provided law enforcement with oral consent to search the same at the scene of his arrest. Moreover, the United States asserts that the consent to search form signed by Mr. Romer at the police department, taken into consideration with his recorded statement, "clearly indicates that [he] was confirming in writing the consent he had previously provided orally to law enforcement. . . ." [Doc. 68 at 11]. The United States further contends that Mr. Romer's characteristics, the nature of the environment when consent was given, and the fact that Mr. Romer was aware of his right to refuse consent all support the conclusion that Mr. Romer's

consent was voluntary. Thus, the United States concludes the evidence obtained from the searches should not be suppressed.

"The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). One such exception is voluntary consent to a search. *Id.* When a consent to search is challenged, a determination, based upon the totality of the circumstances, must be made as to whether the consent was "freely and voluntarily given." *Id.* Our Court of Appeals has established the following factors to be considered in determining whether a consent to search was given freely and voluntarily:

> [T]he characteristics of the accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). Whether the accused knew he possessed a right to refuse consent is a relevant factor, but the government need not demonstrate that the defendant knew of his right to refuse consent to prove that consent was voluntary. Written consent supports a finding that the consent was voluntary. Consent given while in custody may still be voluntary.

*United States v. Boone*, 245 F.3d 352, 361-62 (4th Cir. 2001) (internal citations omitted). Additionally, "[n]either drawing of a gun by an arresting officer, nor the handcuffing of the accused establishes involuntariness in and of itself." *United States v. Elie*, 111 F.3d 1135, 1145 (4th Cir. 1997) (internal quotations omitted), *abrogated on other grounds*, *United States v. Sterling*, 283 F.3d 216, 219 (4th Cir. 2002). Furthermore, the absence of *Miranda* warnings, standing alone, is insufficient to render a consent to search involuntary. *Id.* at 1146. Rather, "the absence of *Miranda* warnings is a factor to be considered in assessing whether a defendant's consent was given voluntarily . . . [in light of] the totality of the circumstances . . . ." *Id.* at 1146 (internal citation omitted). The United States bears the burden to demonstrate, by a preponderance

of the evidence, that the consent obtained was voluntary. *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007).

Based upon the totality of the circumstances, the Court concludes that Mr. Romer orally provided law enforcement officers with voluntary consent to search his vehicle, hotel room, and cellular phone at the scene of his arrest and subsequently confirmed his consent in writing. Mr. Romer's recorded statement supports this conclusion. When asked by Sergeant Sommers in the audio recording if he had given his consent to search "room eleven [*sic*] at the Relax Inn . . . the 2008 blue Ford focus, and the silver Alcatel One Touch smart phone," Mr. Romer replied in the affirmative. [Doc. 67, Ex. 1]. At one point in the recording, Mr. Romer even states that he advised officers at the scene that they could take "whatever they wanted." Additionally, Sergeant Sommers testified at the evidentiary hearing that Mr. Romer orally provided his consent to search his vehicle and hotel room at the scene of the arrest.[1] While Mr. Romer was not advised of his *Miranda* rights prior to providing his consent, this factor is not dispositive; rather, it is only one factor to be considered in examining the totality of the circumstances. *See Elie*, 111 F.3d at 1146.

As to the characteristics of Mr. Romer, the record is void of any evidence that he lacked the intelligence, maturity, or experience to provide Sergeant Sommers with voluntary consent. Mr. Romer was sixty-two years old at the time of his arrest, was literate, held employment

---

[1] The Court notes that there is some discrepancy in the record as to whether Mr. Romer orally provided his consent to search the cellular phone at the scene of the arrest or whether his consent was first obtained in writing during his subsequent interview at the police department. This discrepancy, however, is immaterial absent an allegation or evidence that law enforcement conducted a warrantless search of the contents of the phone prior to obtaining Mr. Romer's otherwise voluntary consent. While Sergeant Sommers testified that he did not "think [he] specifically asked to search the phone on scene….," he further testified that aside from "waking [the phone] up," nothing was done with the phone after it was lawfully seized until Mr. Romer signed the written consent to search form. Accordingly, the Court finds the inconsistency to be inconsequential.

as a truck driver, and was no stranger to the criminal justice system as evidenced by his criminal history. While Mr. Romer was approached by approximately five officers with their firearms drawn prior to his arrest, the drawing of weapons by arresting officers alone does not render the consent involuntary. *See Elie*, 111 F.3d at 1145. The overall conditions under which Mr. Romer provided consent do not indicate an environment that was coercive or traumatic in nature. Indeed, the arrest took place in the daylight hours and officers immediately holstered their weapons once Mr. Romer was arrested. Further, Sergeant Sommers described Mr. Romer as being cordial, cooperative, and compliant upon his arrest and described the demeanor of the interview at the police department as relaxed and casual, which is accurately reflected by the recorded statement. Despite Sergeant Sommers' testimony that he did not inform Mr. Romer at the scene that he could refuse consent to search, Mr. Romer confirmed in his recorded statement that he understood he had the right to refuse consent at the time it was given. Accordingly, the Court finds that the totality of the circumstances indicates that Mr. Romer freely and voluntarily consented to the searches of his vehicle, hotel room, and cellular phone; thus, the evidence obtained from those searches is admissible at trial.

**B.     Alleged Miranda Violations**

Mr. Romer next asserts that (1) he was subjected to a custodial interrogation prior to being provided his *Miranda* warnings — thus requiring suppression of all pre-warning statements —, and (2) the entirety of his post-warning statements must also be suppressed given that they were obtained involuntarily and in violation of *Miranda*. Specifically, Mr. Romer alleges Sergeant Sommers used a "nice guy" tactic with Mr. Romer during his interview, which caused him to make an unknowing decision related to his rights. [Doc. 62 at 3]. Additionally, Mr. Romer asserts that Sergeant Sommers "clearly demonstrated that he was not prepared to recognize [his]

privileges should he choose to exercise them," given that eight and a half minutes elapsed before he was informed of his rights. [*Id.*]. Mr. Romer further contends that the "mid-stream *Miranda* warning does not cure the clear failure to Mirandize him prior to breaking his silence," and the mid-stream warning "led him to a position wherein it would [have been] unnatural to exercise his *Miranda* rights." [*Id.*].

The United States responds that it does not intend to introduce any of Mr. Romer's pre-warning statements in its case-in-chief, rendering the admissibility of those statements moot. Assuming, *arguendo*, that the admissibility of those statements were material, the United States contends that Mr. Romer was not being "interrogated" prior to the issuance of the *Miranda* warnings given that the questions asked were not substantive but only about background information needed for the consent to search form. The United States further contends that the pre-warning questioning "[does] not fall into the category of pre-warning statements that render a 'mid-stream' Miranda warning ineffective." [Doc. 67 at 9]. Rather, the United States asserts that the pre-warning questions posed to Mr. Romer were clearly not coercive and did not involve improper tactics. As to the post-warning statement, the United States asserts that the totality of the circumstances clearly demonstrates that Mr. Romer waived his *Miranda* rights knowingly and voluntarily; thus, the post-warning statements should not be suppressed.

### 1. Pre-warning Statements

At the suppression hearing, Mr. Romer identified four pre-warning questions that took place at the scene of his arrest that he contends amount to an "interrogation" under *Miranda*: (1) "do you consent to the search?" (2) "is this your car?" (3) "is this your phone?" and (4) "what is the passcode to the phone?" Mr. Romer asserts that his pre-warning statements given to these questions must be suppressed. Inasmuch as the United States has stated that it does not intend to

6

offer any of Mr. Romer's pre-warning statements at trial, the Court need not determine whether the above questions amount to an interrogation under *Miranda*.[2]

### 2. Post-warning Statements

As mentioned above, Mr. Romer also asserts that suppression of his post-warning statements is warranted given that the statements were involuntarily obtained in violation of *Miranda*. The Court disagrees.

"Concerns under *Miranda* only arise when a defendant is in custody and subjected to interrogation." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017). Even where *Miranda* applies, however, a defendant may waive his rights by voluntarily submitting to custodial interrogation. *See United States v. Hicks* 748 F.2d 854, 859 (4th Cir. 1984); *United States v. Cristobal*, 293 F.3d 134, 139-40 (4th Cir. 2002). In determining whether a defendant waived his *Miranda* rights, the court looks both to the voluntariness of the waiver "in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception," and whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Cristobal*, 293 F.3d at 139-40 (4th Cir. 2002). It is the burden of the United States to prove that the waiver was knowing and voluntary by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

---

[2] The Court notes, however, that "the mere act of consenting to a search . . . does not incriminate a defendant even though the derivative evidence uncovered may itself be highly incriminating;" thus, "a consent to search is not the type of incriminating statement toward which the Fifth Amendment is directed." *United States v. Henley*, 984 F.2d 1040, 1042-43 (9th Cir. 1993); *see also U.S. v. Guess*, 756 F.Supp.2d 730, 746 (E.D. Va. 2010) (explaining "an officer asking for consent to search is generally not engaged in interrogation for *Miranda* purposes."); *United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993) (holding that consenting to a search is not a self-incriminating statement, and "therefore a request to search does not amount to interrogation."); *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1568 (10th Cir. 1993) (holding "consenting to a search is not evidence of a testimonial or communicative nature which would require officers to first present *Miranda* warnings.").

In determining whether a statement is knowing and voluntary, the Court examines the "totality of the circumstances surrounding the interrogation, including the suspect's intelligence and education, age and familiarity with the criminal justice system, and the proximity of the waiver to the giving of the Miranda warnings." *United States v. Dire*, 680 F.3d 446, 474 (4th Cir. 2012). Furthermore, in determining voluntariness, the crucial inquiry is whether the suspect's "will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987) (citing *Schneckloth*, 412 U.S. at 225-26).

Here, the Court concludes that the totality of the circumstances indicates that Mr. Romer waived his *Miranda* rights knowingly and voluntarily. The characteristics of Mr. Romer support this conclusion inasmuch as he is sixty-two years old and has a lengthy criminal history. Moreover, there is no basis to question Mr. Romer's maturity or ability to properly understand his rights and the consequences associated with abandoning the same.

Furthermore, Mr. Romer's recorded statement demonstrates that he was clearly advised of his *Miranda* rights both orally and in writing and that he signed the waiver immediately after being advised of those rights. Mr. Romer even appears eager to offer his assistance after signing the waiver, stating to Sergeant Sommers, "[I'll] tell you anything you want to know." [Doc. 67, Ex. 1]. There is simply no evidence that Sergeant Sommers used any kind of intimidation, coercion, or deception in obtaining Mr. Romer's waiver. To the contrary, the recording demonstrates that the conversation was relaxed, non-hostile, and cordial at all times, which is consistent with Sergeant Sommers' testimony. Further, contrary to Mr. Romer's assertion, Sergeant Sommers showed a recognition of Mr. Romer's privileges when he stopped him from answering a substantive question that was inadvertently asked prior to the issuance of the *Miranda*

warnings. Indeed, after Mr. Romer was Mirandized, Sergeant Sommers explained that the reason he stopped Mr. Romer from answering the question was because they had not yet gone over his rights. Finally, the Court disagrees with Mr. Romer's assertion that the "mid-stream" warnings led him to an unnatural position to exercise his rights given that no coercive tactics were used by Sergeant Sommers in the time preceding the warnings. Accordingly, the Court concludes that Mr. Romer knowingly and voluntarily waived his *Miranda* rights; thus, his post-warning statements are admissible at trial.

### III.

For the foregoing reasons, the Court **DENIES** Mr. Romer's Motion to Suppress [**Doc. 62**]. The Clerk is directed to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTERED: June 30, 2020

Frank W. Volk
United States District Judge